IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PAMELA R. BARNHILL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 09-961 SLR |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

Gary Linarducci, Esquire of Linarducci & Butler, New Castle, Delaware. Counsel for Plaintiff.

David C. Weiss, Esquire, United States Attorney, District of Delaware, and Patricia A. Stewart, Esquire, Special Assistant United States Attorney, Wilmington, Delaware. Counsel for Defendant. Of Counsel: Eric P. Kressman, Esquire, Regional Chief Counsel, and Donald K. Neely, Assistant Regional Counsel, of the Office of the General Counsel, Philadelphia, Pennsylvania.

**MEMORANDUM OPINION**

Dated: May 1ᴢ, 2011
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Pamela R. Barnhill ("plaintiff") appeals from a decision of Michael J. Astrue, the Commissioner of Social Security (the "Commissioner"), denying her application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. Currently before the court are the parties' cross motions for summary judgment. (D.I. 9; D.I. 11) The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g).[1]

## II. BACKGROUND

### A. Procedural History

On June 17, 2005, plaintiff filed an application for SSI alleging disability beginning on June 28, 2004. (D.I. 6 at 90) Plaintiff asserted disability due to high blood pressure, diabetes, headaches, hip pain, asthma, ovarian cysts and angina. (*Id.* at 90) Plaintiff's application was denied initially on November 14, 2005 and upon reconsideration on July 9, 2006. (*Id.* at 58-71) A hearing was held on July 3, 2007 before administrative law judge, Judith A. Showalter ("ALJ"). (*Id.* at 35-39) Plaintiff's counsel amended plaintiff's alleged onset date to June 17, 2005. (*Id.* at 457) After

---

[1] Under § 405(g),

[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision . . . . Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides . . . .

42 U.S.C. § 405(g).

receiving testimony from plaintiff and a vocational expert ("VE"), the ALJ issued a

decision on November 20, 2007, concluding that plaintiff is not disabled within the

meaning of the Social Security Act. (*Id.* at 12-22) Specifically, the ALJ determined that

plaintiff can perform other work that exists in the national economy. (*Id.* at 9) The ALJ

made the following findings:

> 1.  The claimant has not engaged in substantial gainful activity since June 17, 2005, the application date (20 C.F.R. §§ 416.920(b) and 416.971 *et seq.*).
>
> 2.  The claimant has the following severe impairments: lumbar spine degenerative disc disease and diabetes mellitus (20 C.F.R. § 416.920(c)).
>
> 3.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926).
>
> 4.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work except she can lift and carry up to 20 pounds occasionally, up to 10 pounds frequently, she can stand and walk for up to 6 hours in an 8-hour workday, she can sit for up to 6 hours in an 8-hour workday, she can never climb ladders, ropes, or scaffolds, occasionally kneeling, crouching, and crawling, avoiding concentrated exposure to temperature extremes, wetness, humidity, fumes, gas, odors, and poor ventilation, and limited to simple, unskilled jobs due to medication side effects.
>
> 5.  The claimant has no past relevant work (20 C.F.R. § 416.965).
>
> 6.  The claimant was born on November 17, 1961 and was 43 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 C.F.R. § 416.963).
>
> 7.  The claimant has a limited education and is able to communicate in English (20 C.F.R. § 416.964).
>
> 8.  Transferability of job skills is not an issue because the claimant does not have past relevant work (20 C.F.R. § 416.968).
>
> 9.  Considering the claimant's age, education, work experience, and

3

residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 416.960(c) and 416.966).

10. The claimant has not been under a disability, as defined in the Social Security Act, since June 17, 2005, the date the application was filed (20 C.F.R. § 416.920(g)).[2]

(*Id.* at 14-22) In summary, the ALJ concluded that plaintiff's claimed functional limitations were not completely credible when considered with the objective evidence of record as a whole.[3] (*Id.* at 19) Plaintiff appealed the ALJ's decision to the Appeals Council, which declined to review the decision, making it a final decision reviewable by this court. (*Id.* at 4) Plaintiff filed the present action on December 16, 2009. (D.I. 1 at 1)

## B. Documentary Evidence

Plaintiff claimed disability starting in June 2005 due to high blood pressure, diabetes, headaches, hip pain, asthma, ovarian cysts and angina. (D.I. 6 at 90) In support of her application, plaintiff completed disability reports, work history reports, pain questionnaires and function reports to provide a depiction of her daily life. Plaintiff lives with her husband[4] and her brother. (*Id.* at 150-52) When she wakes up in the

---

[2]The ALJ's rationale, which was interspersed throughout the findings, is omitted from this recitation.

[3]Specifically, the ALJ concluded that "the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but . . . the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (*Id.* at 19)

[4]The record suggests that plaintiff has lived with Gene A. Green from her disability onset date to the present date. The nature of plaintiff's relationship with Mr. Green is unclear. Plaintiff alternately lists him as her husband (*id.* at 269-70, 461) and as her boyfriend (*id.* at 168). For purposes of this opinion, the court shall identify Mr.

4

morning, plaintiff checks her sugar levels, eats breakfast, takes her medications and does housework. (Id. at 121) Plaintiff is able to perform some household chores with difficulty, such as doing her laundry, preparing meals, making her bed and cleaning her room. (Id. at 116, 145) Plaintiff needs assistance carrying laundry up and down the stairs, but she is able to iron and can prepare sandwiches and some dinners. (Id. at 123) After plaintiff eats lunch, she is generally unable to do anything else until the evening when she checks her sugar, eats dinner, takes her pain medications and goes to bed at about 9:00 p.m. (Id. at 121) Sometimes plaintiff wakes up in the middle of the night due to her pain. (Id. at 122)

Plaintiff reports that she does not need assistance in caring for herself. (Id. at 122) She is able to feed and walk her dog with the help of her husband, but she cannot walk for more than a block. (Id. at 107, 122) Plaintiff can pay bills, count change, handle a savings account and use a checkbook. (Id. at 124) She watches television, talks on the telephone and does Bible studies with her husband, and she is able to go to her doctors' appointments[5] on a regular basis. (Id. at 125) She does not visit friends or family anymore, but her family comes to visit her. (Id. at 126, 173) Plaintiff reports being able to pay attention "for as long as [she] need[s] to." (Id. at 126) However,

---

Green as plaintiff's husband.

[5]Plaintiff lists "church" as a place she goes on a regular basis in function reports dated August 12, 2005 and March 15, 2006, respectively. (Id. at 121-25, 150-54) In an undated disability report and a disability report dated July 19, 2006, plaintiff claims that she "no longer goes to church due to discomfort caused by sitting in the pews." (Id. at 107, 168-73) Plaintiff's hearing testimony from July 3, 2007 reflects that she attends church "when [she] can" and stands up periodically during the services. (Id. at 480)

5

plaintiff can no longer take care of her grandchildren,[6] drive a car or visit friends, and she needs assistance with grocery shopping. (Id. at 107, 114, 144, 173)

Plaintiff began treating at St. Francis Hospital in 2004 with primary care physician Dr. Paul Eberts, who examined and treated plaintiff prior to the alleged disability onset date for her asthma, neuropathy in her feet, diabetes, headaches and hypertension. (Id. at 214-57) Plaintiff also treated with Dr. Andrew J. Gelman at St. Francis Hospital in December 2004 for her hip pain. (Id. at 273-74) Dr. Gelman evaluated an MRI and an x-ray of plaintiff's hip and found no joint disease. (Id. at 235)

Beginning in May 2006, plaintiff treated with Dr. Anne C. Mack, a physical medicine and rehabilitation specialist. (Id. at 363-421) At her initial evaluation, plaintiff indicated that her back pain began as the result of a 2002 motor vehicle accident. (Id. at 417-20) Dr. Mack noted that an MRI performed on June 8, 2006 showed mild degenerative disc disease in plaintiff's back but no disc herniation or neural impingement. (Id. at 366, 371) Following a November 2006 visit, Dr. Mack described significantly decreased extension in plaintiff's lumbar spine, with tenderness to the touch. (Id. at 401) Dr. Mack noted that plaintiff's sensation was intact to light touch throughout the lower extremities, and her strength and gait were normal. (Id.) Plaintiff described her pain in December 2006 as "not as bad." (Id. at 398)

Dr. Mack discussed the possibility of using steroid injections to treat plaintiff's lower back pain but ultimately rejected the idea, noting "the lack of definitive findings relating to the cause of pain" and expressing concern regarding the effect of the

---

[6]The record does not further specify plaintiff's role in caring for her grandchildren, nor does it indicate how many grandchildren plaintiff has.

6

injections on plaintiff's diabetes mellitus. (Id. at 410-15) Instead, Dr. Mack prescribed Soma and Vicodin, later replaced by Percocet, for plaintiff's pain. (Id. at 407)

In July 2006, plaintiff began treating with primary care physician Karlo Magat, M.D. (Id. at 284-322) Dr. Magat's records demonstrate that, although plaintiff's diabetes mellitus was initially uncontrolled when she did "not tak[e] her Metformin regularly as directed," plaintiff's diabetes improved with treatment. (Id. at 288-90) Specifically, Dr. Magat's later reports indicate that "[plaintiff's] sugars have been very good lately." (Id. at 288) Plaintiff's blood pressure also improved over time, steadily dropping from 160/110 at her initial visit with Dr. Magat to 100/80 at her most recent visit. (Id. at 284, 288, 302)

In August 2006, Dr. Magat referred plaintiff to rheumatologist Philip S. Schwartz to address plaintiff's ongoing complaints of pain in her right hip and back. (Id. at 323-27) Dr. Schwartz performed an extensive laboratory evaluation on plaintiff and found that plaintiff tested positive for hepatitis C and Lyme. (Id.) Dr. Schwartz prescribed Doxycycline initially for Lyme disease and later recommended symptomatic treatment. (Id. at 323-24) Plaintiff treated with certified nurse practitioner Eileen L. Williams for hepatitis C. (Id. at 328-30) Nurse Williams diagnosed plaintiff with hepatitis C with a low level of progression and, after discussing treatment options with plaintiff, plaintiff chose not to be treated. (Id. at 328)

Plaintiff treated with podiatrist Michael Henry from July 2006 to June 2007. (Id. at 331-60) Dr. Henry diagnosed a neuroma in the third interspace of plaintiff's right foot and a deformed third metatarsal in her right foot, noting that plaintiff demonstrated

decreased vibration sensation, decreased pin prick sensation and decreased light touch sensation in both feet. (*Id.* at 333) Dr. Henry initially instructed plaintiff to stretch and ice her foot and use shoe inserts, and later prescribed orthotics, injected her foot with Lidocaine, Marcaine, Depomedrol and Dexamethasone Phosphate and administered alcohol sclerosing injections. (*Id.* at 337, 339, 341, 357)

### C. Medical Opinions Regarding Residual Functional Capacity

Dr. John F. DeCarli examined plaintiff on a consultative basis in September 2005 to assess her hip pain. (D.I. 6 at 205) Dr. DeCarli noted that plaintiff was able to walk heel-to-toe and had unremarkable ranges of motion in her extremities. (*Id.* at 204) Dr. DeCarli concluded that plaintiff could work four to six hours during the course of a normal eight hour work day with normal breaks. (*Id.* at 205) He determined that she could not lift ten pounds during the course of the workday and found that she suffered from right hip pain, diabetes, hypertension and a history of angina and asthma. (*Id.*)

On November 10, 2005, Dr. Anne Aldridge, a state agency physician, performed a residual functional capacity assessment and determined that plaintiff could lift twenty pounds occasionally and ten pounds frequently, stand or walk for a total of six hours in an eight hour work day and sit for a total of six hours in an eight hour workday. (*Id.* at 207) Dr. Aldridge found that plaintiff's blood pressure was under control, plaintiff's asthma was not severe and the medical examinations revealed no evidence of angina. (*Id.* at 208) Based on the evidence, Dr. Aldridge concluded that plaintiff has a residual functional capacity for light work with respiratory irritant restrictions. (*Id.*) On June 21, 2006, Dr. Nisha Singh, a state agency physician, reviewed the evidence of record and

affirmed the findings made by Dr. Aldridge. (*Id.* at 213)

On June 18, 2007, Dr. Mack completed a residual functional capacity evaluation regarding plaintiff's condition. (*Id.* at 363-65) Dr. Mack noted that plaintiff could lift ten pounds occasionally, stand or walk for a total of one hour in an eight hour workday, and sit for a total of four hours in an eight hour workday. (*Id.* at 363) Dr. Mack noted that plaintiff cannot stoop, crouch, climb ladders or climb stairs as a result of her condition. (*Id.* at 364) Dr. Mack described plaintiff's pain as severe and stated that her ability to work would be further limited by her diabetes mellitus. (*Id.*) Dr. Mack opined that plaintiff would not be able to perform sedentary work on a regular and continuing basis due to the severity of her lower back pain, citing the MRI results showing mild degenerative disc disease in support of her conclusion. (*Id.* at 365)

On July 6, 2007, Dr. Magat completed a residual functional capacity evaluation regarding plaintiff's condition. (*Id.* at 450) Dr. Magat's evaluation indicates that plaintiff can lift ten pounds occasionally, stand or walk for one to two hours in an eight hour workday and sit for four hours in an eight hour workday. (*Id.*) Due to plaintiff's severe pain levels, Dr. Magat opined that plaintiff would likely miss five or more days of work per month and noted that plaintiff is unable to stoop, reach upwards or climb ladders or stairs. (*Id.* at 450-51) Dr. Magat concluded that plaintiff would not be able to perform sedentary work on a regular and continuing basis due to her inability to maintain regular, consistent working hours. (*Id.* at 452)

## D. Hearing Before the ALJ

### 1. Plaintiff's testimony

Plaintiff was 45 years old at the time of the ALJ's decision. (D.I. 6 at 460) She has a ninth grade education. (*Id.* at 461) The ALJ did not consider plaintiff's past work experience because it did not meet the salary requirements. (*Id.* at 462) Plaintiff is married and has no children under the age of 18. (*Id.* at 461) She lives with her brother and her husband. (*Id.* at 478) She is five foot one and weighs 169 pounds. (*Id.* at 460)

At the hearing, plaintiff testified that she was incarcerated for six months in 2004 and worked for four days at a housekeeping job upon her release. (*Id.* at 462) Plaintiff testified that she could not continue to work due to pain in her back. (*Id.*) She hoped to return to work in about a year. (*Id.* at 463) As of the hearing date, plaintiff testified that her diabetes and back pain interfered with her daily activities and prevented her from working. (*Id.*) Plaintiff testified that she has always had back pain, but it worsened within the past couple of years and is present all day, every day. (*Id.* at 464) Plaintiff visits Dr. Mack for her back pain, takes daily doses of Percocet and Soma and visits a physical therapist. (*Id.*) When taking the medication, she still experiences occasional spasms, and her pain level is a six out of ten. (*Id.* at 465)

Plaintiff testified that she was diagnosed with diabetes in May of 2004. (*Id.* at 465-66) Dr. Magat treats plaintiff's diabetes by prescribing Lantus injections and Metformin. (*Id.* at 466) Plaintiff experiences blurry vision and has been taking various eye drops for the past year. (*Id.*) Plaintiff was prescribed glasses, but she testified that

10

she has seen no improvement in her vision when wearing the glasses. (Id.) Plaintiff experiences numbness in her hands and feet every day and tingling in her hands and feet. (Id. at 467) Plaintiff has difficulty buttoning a blouse or zipping up a jacket and cannot pick a coin up off a table with her fingers. (Id.) However, plaintiff testified that she is able to count paper money, hold a fork or toothbrush and write with a pen. (Id. at 467-68) She can hold a cup of water to drink and can open a car door or doorknob. (Id. at 468) Plaintiff has open sores on her feet and sees Dr. Henry to treat her foot problems. (Id.) Dr. Henry has given plaintiff four injections to treat two bones in her right foot that press against a nerve, but plaintiff continues to experience pain and will possibly undergo surgery. (Id. at 468-69)

Plaintiff's high blood pressure has been improving with medication. (Id. at 469) Plaintiff testified that her blood pressure was 130/80 at her last appointment a month prior to the hearing. (Id. at 470) Plaintiff takes Spiriva, Singulair and an inhaler to control her asthma. (Id.) She last went to an emergency room for an asthma attack in 2005. (Id.) Plaintiff testified that she coughs every day and wheezes when she smokes cigarettes. (Id. at 471) Dr. Magat has advised plaintiff to stop smoking, and plaintiff has cut back to five or six cigarettes per day. (Id.) Plaintiff also treats with Dr. Denaburg for angina and takes nitroglycerin for the pain. (Id.)

Plaintiff suffers from diverticulitis and has been on a high fiber diet for treatment, but she has not found it to be effective. (Id. at 472) She suffers from severe and constant pain in her stomach, diarrhea and constipation. (Id.) Plaintiff testified that the pain in her stomach is about an eight out of ten. (Id. at 473) Plaintiff treats with Dr.

11

Magat and specialist Dr. Muhammad for her diverticulitis. (*Id.* at 473) Plaintiff treats with Nurse Williams for hepatitis C and gets checked every year but does not require treatment at this time. (*Id.*) Plaintiff treated with Dr. Schwartz once for rheumatoid arthritis, but Dr. Schwartz did not consider the condition severe enough to require treatment. (*Id.* at 481)

Plaintiff also testified that she has severe depression, and Dr. Magat prescribed Cymbalta. (*Id.* at 474) Plaintiff testified that the Cymbalta has had no effect. (*Id.* at 475-76) She has not seen a mental health therapist. (*Id.* at 474) Plaintiff testified that she does not have thoughts of harming herself and has periods in which she wants to cry once in a while. (*Id.*) She experiences constant paranoid thoughts, severe mood swings and has verbal fights with others. (*Id.* at 474-75) Plaintiff testified that she has problems with short term memory and experiences anxiety attacks two or three times a month for about an hour, but she does not have hallucinations. (*Id.* at 475) Plaintiff has a history of substance abuse but has not used drugs or alcohol in almost four years. (*Id.* at 476)

Plaintiff is able to stand for only a matter of minutes on the average day. (*Id.* at 477) Plaintiff can walk around the block in about half an hour, stopping twice. (*Id.*) Plaintiff is able to sit for less than an hour at a time. (*Id.*) Plaintiff testified that she cannot lift a baby. (*Id.*) Plaintiff is unable to bend forward, kneel down or stoop. (*Id.*)

Plaintiff testified that she sleeps more than eight hours a day due to the medications she takes, which make her drowsy. (*Id.* at 478) Plaintiff testified that she needs assistance washing her hair, and her brother does the cooking and cleaning for

12

the household. (Id.) However, plaintiff is otherwise able to maintain her personal hygiene, take her medication, make sandwiches and use the microwave, and occasionally go grocery shopping. (Id. at 478-79) Plaintiff has a driver's license but drives only occasionally; she is able to catch the bus. (Id. at 461, 479) Plaintiff gets along with her husband and brother for the most part, but testified that they get into occasional disagreements. (Id. at 479-80) Plaintiff visits with other family members but does not socialize with friends or neighbors. (Id. at 480) Plaintiff does not often go out to eat. She belongs to a church but must get up during the services. (Id.)

Plaintiff testified that her daily routine involves sitting up in bed and taking her medicine. (Id. at 481) When her medicine begins to work, she gets up, goes to the bathroom and takes a shower. (Id.) Her husband helps her wash her hair. (Id.) She then gets dressed and goes back to sleep. (Id.) She wakes up in the afternoon to check her sugar, eat lunch and take her medication, after which she goes back to sleep. (Id.)

## 2. Vocational expert's testimony

The ALJ asked Jan Howard Reed, the vocational expert, to assume a hypothetical individual with plaintiff's vocational characteristics and give an opinion as to whether such a hypothetical individual could perform a significant number of jobs in the economy. (Id. at 483) The following exchange occurred between the ALJ, vocational expert and plaintiff:

> ALJ: [T]his person is age 42. The age of the Claimant at on-set. This person has a ninth grade education, the work, no work history and therefore, this person would be limited to simple, un-skilled work as generally a light level of exertion. If you could several at light, several at

13

> sedentary. Posturals, all occasional but never climbing a ladder, a rope or
> a scaffold. This person should avoid concentrated exposure to
> temperature extremes, wetness, humidity, fumes, odors, dust, gases, poor
> ventilation and would be limited to simple, un-skilled work. Would there
> be any examples, maybe several at light, several at sedentary that would
> fit a person of that age, education and no work experience?

(*Id.*) The vocational expert testified that such a hypothetical individual could perform a

significant number of unskilled light and sedentary jobs in the national and regional

economies. (*Id.*) Light jobs included packer, cashier and hostess. (*Id.*) Sedentary

unskilled jobs included assembler, inspector and order clerk. (*Id.* at 483-84) Plaintiff's

attorney declined to examine the vocational expert. (*Id.* at 484)

## III. STANDARD OF REVIEW

Findings of fact made by the Commissioner are conclusive, if they are supported

by substantial evidence. Accordingly, judicial review of the Commissioner's decision is

limited to determining whether "substantial evidence" supports the decision. *See*

*Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). In making this

determination, a reviewing court may not undertake a de novo review of the

Commissioner's decision and may not re-weigh the evidence of record. *See id.* In

other words, even if the reviewing court would have decided the case differently, the

Commissioner's decision must be affirmed if it is supported by substantial evidence.

*See id.* at 1190-91.

The term "substantial evidence" is defined as less than a preponderance of the

evidence, but more than a mere scintilla of evidence. As the United States Supreme

Court has noted, substantial evidence "does not mean a large or significant amount of

evidence, but rather such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). The Supreme Court also has embraced this standard as the appropriate standard for determining the availability of summary judgment pursuant to Federal Rule of Civil Procedure 56. The inquiry performed is the threshold inquiry of determining whether there is the need for a trial–whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

This standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), "which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. If reasonable minds could differ as to the import of the evidence, however, a verdict should not be directed." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986) (internal citations omitted). Thus, in the context of judicial review under § 405(g), "[a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence–particularly certain types of evidence (e.g., that offered by treating physicians)–or if it really constitutes not evidence but mere conclusion." *See Brewster v. Heckler*, 786 F.2d 581, 584 (3d Cir. 1986) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). Where, for example, the countervailing evidence consists primarily of the plaintiff's subjective complaints of disabling pain, the Commissioner "must consider the subjective pain and specify his reasons for rejecting these claims and support his conclusion with medical evidence in the record." *Matullo v. Bowen*, 926

15

F.2d 240, 245 (3d Cir. 1990).

## IV. DISCUSSION

### A. Disability Determination Process

Eligibility for SSI under the Social Security Act is conditioned on compliance with all relevant requirements of the statute. *See* 42 U.S.C. § 1382(a). The Social Security Administration is authorized to pay SSI to persons who are "disabled." *Id.* A claimant is disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." *See* 42 U.S.C. § 1382c(a)(3). To determine disability, the Commissioner uses a five-step sequential analysis. *See* 20 C.F.R. § 416.920(a). If a finding of disability or non-disability can be made at any point in the sequential process, the Commissioner will not review the claim further. 20 C.F.R. § 416.920(a)(4).

At step one, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity. *See* 20 C.F.R. § 416.920(a)(4)(i) (mandating a finding of non-disability when claimant is engaged in substantial gainful activity). If the claimant is not engaged in substantial gainful activity, step two requires the Commissioner to determine whether the claimant is suffering from a severe impairment or a combination of impairments that is severe. *See* 20 C.F.R. § 416.920(a)(4)(ii) (requiring finding of not disabled when claimant's impairments are not severe). If claimant's impairments are severe, the Commissioner, at step three, compares the claimant's impairments to a list of impairments (the "listing") that are presumed severe enough to preclude any gainful

work.[7] See 20 C.F.R. § 416.920(a)(4)(iii); Plummer v. Apfel, 186 F.3d 422, 427-28 (3d Cir. 1999). When a claimant's impairment or its equivalent matches an impairment in the listing, the claimant is presumed disabled. See 20 C.F.R. § 416.920(a)(4)(iii). If a claimant's impairment, either singly or in combination, fails to meet or medically equal any listing, the analysis continues to steps four and five. See 20 C.F.R. § 416.920(e).[8]

At step four, the Commissioner determines whether the claimant retains the RFC to perform her past relevant work. See 20 C.F.R. § 416.920(a)(4)(iv); Plummer, 186 F.3d at 428 (stating a claimant is not disabled if able to return to past relevant work). If the claimant is unable to return to her past relevant work, step five requires the Commissioner to determine whether the claimant's impairments preclude her from adjusting to any other available work. See 20 C.F.R. § 416.920(g) (mandating that a claimant is not disabled if the claimant can adjust to other work). At this last step, the burden is on the Commissioner to show that the claimant is capable of performing other available work before denying disability benefits. Id. In other words, the Commissioner must prove that there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her RFC, age, education and past work experience. 20 C.F.R. §§ 416.912(g), 416.960(c). This determination requires the Commissioner to consider the cumulative effect of the claimant's

_____

[7] Additionally, at steps two and three, claimant's impairments must meet the duration requirement of twelve months. See 20 C.F.R. §§ 416.909.

[8] Prior to step four, the Commissioner must assess the claimant's residual functional capacity ("RFC"). See 20 C.F.R. § 416.920(e). A claimant's RFC is "that which an individual is still able to do despite the limitations caused by his or her impairment[s]." Fargnoli v. Massanari, 247 F.3d 34, 40 (3d Cir. 2001) (quoting Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000)

17

impairments and a vocational expert is often consulted. *Plummer*, 186 F.3d at 428.

## B. Whether the ALJ's Decision is Supported by Substantial Evidence

Plaintiff contends that the ALJ's determination was not based upon substantial evidence because the ALJ failed to properly weigh the opinions of plaintiff's treating physicians and improperly accepted the opinion of the non-examining state agency physicians. After reviewing the decision of the ALJ in light of the relevant standard of review and the applicable legal principles, the court concludes that the ALJ's decision is supported by substantial evidence. In reaching this conclusion, the court is persuaded that the ALJ appropriately considered the opinions of plaintiff's treating medical sources in light of the legal framework for reviewing such opinions.

To determine a treating source opinion's weight, the ALJ must weigh all evidence and resolve any material conflicts.[9] *See Richardson v. Perales*, 402 U.S. 389, 399 (1971); *Fargnoli*, 247 F.3d at 43 (recognizing that the ALJ may weigh the credibility of the evidence). The regulations generally provide that more weight is given to treating source opinions; however, this enhanced weight is not automatic. *See* 20 C.F.R. § 416.927(d)(2). Treating source opinions are entitled to greater weight when they are supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with other substantial evidence in the record. 20 C.F.R. §

---

[9] The court notes that the ALJ's review and determination of weight for a treating physician's opinion is not unlimited. "In choosing to reject the treating physician's assessment, an ALJ may not make 'speculative inferences from medical reports' and may reject 'a treating physician's opinion outright only on the basis of contradictory medical evidence' and not due to his or her own credibility judgments, speculation or lay opinion." *Morales v. Apfel*, 225 F.3d 310, 317-18 (3d Cir. 2000) (citing *Plummer*, 186 F.3d at 429; *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988); *Kent v. Schweiker*, 710 F.2d 110, 115 (3d Cir. 1983)).

416.927(d)(2); *see Fargnoli*, 247 F.3d at 43. "Although a treating physician's opinion is entitled to great weight, a treating physician's statement that a plaintiff is unable to work or is disabled is not dispositive." *Perry v. Astrue*, 515 F. Supp. 2d 453, 462 (D. Del. 2007); *see also* 20 C.F.R. § 416.927(e)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). The ALJ may discount the opinions of treating physicians if they are not supported by the medical evidence, provided that the ALJ adequately explains his or her reasons for rejecting the opinions. *See Fargnoli*, 247 F.3d at 42. When a treating physician's opinion conflicts with a non-treating physician's opinion, the Commissioner, with good reason, may choose which opinion to credit. *See Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000).

If a treating opinion is deemed not controlling, the ALJ uses six enumerated factors to determine its appropriate weight. *See* 20 C.F.R. § 416.927(d)(2)-(d)(6). The factors are: (1) length of the treatment relationship; (2) nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors. *See id.* The supportability factor provides that "[t]he better an explanation a source provides for an opinion, the more weight [the ALJ] will give that opinion." 20 C.F.R. § 416.927(d)(3). Similarly, the consistency factor states that the "more consistent an opinion is with the record as a whole, the more weight [the ALJ] will give to that opinion." 20 C.F.R. § 416.927(d)(4).

In this case, the ALJ considered the opinions of plaintiff's treating medical sources but concluded that they were entitled to no weight. In support of her

conclusion, the ALJ observed that Drs. Mack and Magat "failed to point to any tests or any other objective findings to support their conclusions." (D.I. 6 at 20) Dr. Magat's ultimate opinion that plaintiff was unable to sustain work due to the results of an MRI revealing degenerative disc disease was not supported by his treatment notes, which indicated that he did not treat plaintiff for her degenerative disc disease. Moreover, Dr. Magat noted periods of improvement in plaintiff's diabetes mellitus, particularly when she complied with her medication schedule. See 20 C.F.R. § 416.930(a) (requiring as a prequisite to a benefits award that claimant comply with treatment that can restore ability to work, unless there is good reason for non-compliance).

Additionally, the ALJ gave no weight to the opinion of Dr. Mack, who opined in June 2007 that plaintiff's lower back pain would prevent her from performing sedentary work on a regular and continuing basis, citing the MRI results showing mild degenerative disc disease in support of her conclusion. (D.I. 6 at 365) As the ALJ noted, Dr. Mack's treatment notes do not support the extent and degree of limitations found by Dr. Mack. Dr. Mack's treatment notes indicate that the MRI results did not reveal a more serious condition such as disc herniation or neural impingement. (Id. at 366, 371) Although plaintiff reported severe pain at the onset of her visits, she conceded improvement in her pain levels with medication. (Id. at 410) In addition, Dr. Mack limited her treatment of plaintiff to pain medications and did not recommend more extensive treatment such as injections or surgery "due to the lack of definitive findings pointing to the cause of the pain." (Id.) Because Dr. Mack's opinions regarding plaintiff's disability lack support in her treatment notes, the court cannot conclude that the ALJ erred in rejecting Dr. Mack's opinion.

Plaintiff contends that the ALJ should not have accepted the opinion of the state agency physicians over the opinion of her treating physicians; however, the opinions of reviewing state agency physicians can constitute sufficient evidence to support an ALJ's determination of non-disability when those opinions are consistent with the evidence in the record. *See Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991). In this case, the reviewing state agency physician noted that plaintiff experienced pain in her right hip, plaintiff's primary care physician indicated that plaintiff had a good range of motion, and plaintiff had no clinically significant hyper or hypo glycemic events or evidence of end organ pathology with respect to her diabetes mellitus. (D.I. 6 at 207) Based on the evidence of record, the court cannot conclude that these opinions are deficient or otherwise insufficient to constitute substantial evidence supporting the ALJ's finding that plaintiff is not disabled. *See Monsour Med. Ctr.*, 806 F.2d at 1190-1191.

In sum, the court concludes that substantial evidence supports the ALJ's determination that plaintiff was not disabled during the relevant period. Plaintiff undoubtedly suffers from back pain and diabetes mellitus but, as the ALJ explained with sufficient record support, these ailments do not preclude her from performing work in the national economy. Accordingly, the court will affirm the decision of the ALJ denying plaintiff's application for SSI.

## V. CONCLUSION

For the reasons stated above, the ALJ's decision is supported by substantial evidence. Plaintiff's motion for summary judgment is denied. Defendant's motion for summary judgment is granted. An appropriate order shall issue.